UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN A. TOLLIVER, *et al.*,

    **Plaintiffs,**

    v.

TERRY COLLINS, Director
O.D.R.C., *et al.*,

    **Defendants.**

Civil Action 2:08-cv-00722
Judge Edmund A. Sargus, Jr.
Magistrate Judge E. A. Preston Deavers

## REPORT AND RECOMMENDATION

This is a civil rights action in which Plaintiff, Kevin A. Tolliver, a state-prison inmate proceeding without the assistance of counsel, alleges that Defendants exposed him, against his will, to secondhand smoke in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.[1] This matter is before the Court for consideration Defendants' Second Motion for Summary Judgment (ECF No. 151), Plaintiff's Memorandum in Opposition (ECF No. 155), and Defendants' Reply (ECF No. 156). For the reasons that follow, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**.

---

[1] The Court dismissed the only other Plaintiff, Robert O'Donnell, pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute. (ECF No. 116.) Plaintiff Tolliver names in his Complaint the following Defendants in their individual and official capacities: Terry Collins, Director of Ohio Department of Rehabilitation and Correction ("ODRC"); Michael Sheets, Warden of Ross Correctional Institute ("RCI"); Charlene Payne, RCI's Unit Manager Administrator; Cassie Johnson, Unit Manager for Inmate Housing Facility Number Seven, which was a non-smoking facility at the time this action was filed; and unnamed corrections officers and staff members. (Tolliver Compl. ¶¶ 5, 13–17, 32, ECF No. 4.)

**I.**

During Plaintiff Tolliver's ("Plaintiff") incarceration, he was housed in unit 7A, a "Tobacco Free Housing" unit at RCI. Plaintiff alleges that he was moved to unit 7A after serious altercations with inmate smokers who were moved into the cell where Plaintiff was housed. He further alleges that Defendants moved him to 7A in December 2006 to prevent physical violence from other inmates and to safeguard Plaintiff's health from the dangers of exposure to environmental tobacco smoke ("ETS").

After his move, Plaintiff states that he learned that 7A was not smoke-free, despite its classification as a tobacco free housing unit. He represents that because Defendants refused to enforce 7A's no-smoking policy, officers, cellmates, and other inmates housed in 7A smoked, exposing him to ETS. Plaintiff further represents that this ETS exposure caused him to suffer various respiratory problems, including asthma, sinus problems, and diminished lung capacity. He testified that doctors put him on asthmatic inhalers to treat his asthma. (Tolliver Dep. 11, 57, ECF No. 152.)

Defendant Johnson served as the unit manager of 7A between July 2006 and June 2008. In her Declaration, Johnson explains that inmates moving into 7A were required to sign a Tobacco-Free Housing Request. Johnson drafted the Request Form in December 2007, which a deputy warden approved. Johnson indicates that inmates housed in 7A were precluded from using tobacco in the unit, but could possess tobacco products and use them outside of the unit. The Request Form reflected these rules. Plaintiff testified that the version of the Request Form in place prior to Johnson's December 2007 version prohibited inmates residing in 7A from possessing tobacco. (Tolliver Dep. 42–43, ECF No. 152.) Johnson states that in her experience,

inmates would request to be moved to 7A even though they were smokers so that they could be housed with their friends.  (Johnson Decl. ¶¶ 3–5, 11, ECF No. 151-1.)  She explained the difficulty with enforcing the rules against smoking:

> It was often difficult to enforce the rule against smoking tobacco.  Inmates would attempt to avoid detection by smoking in their rooms with the door closed and the windows open.  I would not be able to detect tobacco use by walking down the hallway.  Inmates were reluctant to inform on other inmates because they did not want to be labeled a "snitch."  The Rules Infraction Board would not find that there was a violation based solely on the testimony of another inmate, because it was common for inmates to make false reports because they had a grudge against another inmate.

(*Id*. at ¶ 14.)  Johnson indicated that she has personally issued a conduct report in 7A for smoking that resulted in the offending inmate's transfer out of the unit.  She notes that in the three months prior to Plaintiff filing his grievance, nine inmates were charged with violating the non-smoking policy, seven of whom were ultimately removed from 7A.  Johnson indicated that she once removed a smoker from Plaintiff's cell at his request.  Plaintiff testified that he recollected this event, but that the same inmate moved back into his cell two-to-three days later.  (Tolliver Dep. 46, ECF No. 152.)

According to Plaintiff, he and other inmates constantly complained about their exposure to ETS, both informally, through "kites" and verbal complaints, and formally, through grievances and lawsuits.  He testified that the wardens and deputy wardens knew him to be "outspoken about the smoking issue."  (*Id*. at 31.)  In addition to the inmate complaints, Plaintiff asserts that Defendants were made aware that 7A's no-smoking policy was not being enforced through official reports and personal observation.  By way of example, Plaintiff recounted an instance wherein he showed Warden Sheets a pole outside of his cell in 7A that had been marked all over from inmates extinguishing their cigarettes on it.  Plaintiff recounted another instance,

3

on September 26, 2008, wherein Warden Sheets, along with Defendants Payne, Collins, and Johnson toured and inspected 7A room-by-room.  According to Plaintiff, on that visit, Warden Sheets observed a corrections officer using smokeless tobacco, cigarette butts on the floor, the smell of smoke, and burn marks on poles where inmates extinguished their cigarettes.

On April 15, 2008, Plaintiff filed an Informal Complaint Resolution ("ICR").  (Defs.' 2nd Mot. for Summ. J. at Ex. A-1, ECF No. 151-2.)  In this ICR, which was marked "received" by Defendant Payne on April 15, 2008, Plaintiff states in pertinent part:

> The rules regarding possession and use of tobacco products in 7A are not being enforced.  There is smoking in common areas and it travels from cell to cell during lock-down times.
>
> This is a clear violation of Ohio law and my constitutional rights.
>
> \*     \*     \*
>
> I have been having asthma and sinus problems that I have not experienced since childhood.  That is to say that I am emotionally as well as physically effected [sic] by the failure to enforce the policy.

(*Id.*)  Under the "action taken" section, it states that "Inmate Tolliver . . . is advised to bring this issue of concern to the attention of the Unit Manager of the unit, Ms. Cassie Johnson."  (*Id.*)  On April 25, 2008, Plaintiff filed a Notification of Grievance ("Grievance").[2]  (*Id.*)  In this Grievance, Plaintiff states:

---

[2] Plaintiff also filed a Notification of Grievance asserting similar allegations directly to the Chief Inspector on April 23, 2008.  In that Grievance, Plaintiff indicates that he attempted to informally resolve his stated issues with the Warden.  The Chief Inspector, upon review of the Grievance, referred Plaintiff to the resolution of Plaintiff's earlier Grievance and took no additional action.

4

>Re: Failure to Implement Non-Smoking Policy in Non-Smoking Block
>
>For well over a year I have been complaining about smoking in the non-smoking block (7A) as well as directly in front of the building . . . . [T]his very important issue affect[s] my health and rights.
>
>My verbal complaints have fallen on deaf ears. My kites have gone unanswered. And my informal complaint was treated with a pass the buck indifference.
>
>\*     \*     \*
>
>Please: 1.) Move all smokers out of the non-smoking block (7A) and replace them with non-smokers. 2.) Shakedown the block and remove all tobacco products. 3.) Do not permit inmates housed in 7A to purchase tobacco products. 4.) Do not move smokers into 7A. 5.) Everyone in 7A should be under contract and removed immediately upon violation. 6.) Smoking cessation programming should be available to anyone wanting to quit smoking. 7.) Only non-smoking staff should be assigned to 7A.
>
>\*     \*     \*
>
>I am put at risk by this lack of action every time I must tell another inmate not to smoke in my presence, tell on an inmate for smoking in the block, or locking down when smoke freely travels through the vents and heat ducts.
>
>\*     \*     \*

(*Id*.) Plaintiff checked a box on the Grievance form representing that he would "experience a substantial risk of personal injury or serious, irreparable harm if [his] grievance [was] not resolved immediately." (*Id*.) On May 21, 2008, the inspector of institutional services, Robert Whitten, after reviewing Plaintiff's Grievance, indicated that he spoke with Defendant Johnson and Officer Gobel regarding efforts to enforce the no smoking rules in 7A. He indicated that additional signs were posted and unit officers were instructed to issue conduct reports for smoking violations. Mr. Whitten also suggested that RCI implement an institution-wide smoking cessation program designed to help inmates quit smoking and "improve the overall

health of the inmate population." (*Id.*) On May 24, 2008, Plaintiff filed his Appeal to the Chief Inspector. He indicated that "[s]aid disposition of grievance has not resolved anything . . . ." He further identified two individuals in 7A who he represents are smokers, stated that he is placed "at risk of physical violence/retaliation" when he reports violations, and represented that he still is being assigned smokers as cellmates. (*Id.*) On June 27, 2008, the office of the Chief Inspector affirmed the disposition of Plaintiff's Grievance.

On August 6, 2008, Plaintiff filed the instant action, asserting an Eighth Amendment claim against Defendants based on his alleged involuntary exposure to high levels of ETS. He seeks injunctive relief and damages. On November 14, 2008, Plaintiff filed a Motion for Summary Judgment (ECF No. 19). The undersigned recommended denial of Plaintiff's Motion based upon Plaintiff's failure to establish as a matter of law that Defendants acted or failed to act with the requisite deliberate indifference. (ECF No. 97.) Defendants also moved for summary judgment on December 28, 2009. (ECF No. 75.) The undersigned recommended denial without prejudice of Defendants' Motion because Plaintiff had not yet had an opportunity to conduct discovery. The undersigned explained that the record appeared "to be underdeveloped with regard to the seriousness of Plaintiff's medical condition, the level of ETS to which he was exposed, the health risks related to that exposure, the knowledge of each Defendant, and the evidence relating to whether Defendants took sufficient action to protect Plaintiff." (July 7, 2010 Report & Rec. 14, ECF No. 97.) The parties did not object, and the Court adopted the Report and Recommendation on August 6, 2010. (ECF No. 99.)

On March 1, 2009, all ODRC buildings and grounds were designated tobacco-free. Consequently, no person may legally smoke, use tobacco products, or possess tobacco products

6

on any ODRC property, whether within or outside buildings. Plaintiff testified that after the tobacco ban, his health has improved but that he still feels like he has some residual shortness of breath. (Tolliver Dep. 57–58, ECF No. 152.)

After the close of discovery, Defendants filed their Second Motion for Summary Judgment. (ECF No. 151.) Plaintiff timely filed a Memorandum in Opposition. (ECF No. 155.) Within his Memorandum in Opposition, Plaintiff indicates that he declined to file another summary judgment motion. He asserts that he instead "stands on" his previous Motion for Summary Judgment. (Pl.'s Mem. in Opp. at 1, ECF No. 155.)

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must,

however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stanberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

Defendants assert that they are entitled to summary judgment for a variety of reasons. Specifically, Defendants maintain that judgment in their favor is appropriate because (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff's injunctive claims are moot; (3) Defendants are entitled to qualified immunity; (4) Plaintiff cannot demonstrate the requisite deliberate indifference; and (5) Plaintiff has not demonstrated that Defendants were personally involved in any claimed constitutional deprivation. The undersigned recommends that the Court find that Plaintiff has exhausted his administrative remedies and that his injunctive claims are moot. The undersigned further recommends that the Court find that Defendants are entitled to qualified immunity and grant their summary judgment motion because Plaintiff has failed to present sufficient evidence on the objective component of his Eighth Amendment claim.

**A.** **Exhaustion of Administrative Remedies**

Defendants contend that Plaintiff's case should be dismissed because he failed to timely exhaust his administrative remedies. Failure to exhaust administrative remedies is an affirmative

defense under the Prison Litigation Reform Act ("PLRA"). *Jones v. Bock*, 549 U.S. 199, 216 (2007). The undersigned concludes that Defendants have failed to prove this affirmative defense.

Under 42 U.S.C. § 1997e(a), as amended by the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)). This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120–9–31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at ODRC must comply with its three-step grievance system. *Id*. For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the

department most directly responsible over the subject matter with which the inmate is concerned. Ohio Admin. Code § 5120–9–31(K)(1). If the inmate is not satisfied with the results, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. Ohio Admin. Code § 5120–9–31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. *Id*. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC. Ohio Admin. Code § 5120–9–31(K)(3). An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector. In circumstances where the inmate alleges misconduct on the part of the warden or inspector of institutional services at the prison where he is confined, he may initiate a grievance directly with the office of Chief Inspector. *See* Ohio Admin. Code § 5120-9-30(M).

Here, Defendants argue that Plaintiff failed to timely file grievances concerning the various fact situations of which he complains. By way of example, Defendants point out that Plaintiff did not grieve Defendants presence when a correctional officer dipped snuff in 7A, nor did he grieve Johnson's promulgation of a new non-smoking Request Form which permitted possession of tobacco in 7A.

Defendants' arguments are unpersuasive. Plaintiff does not assert claims premised upon these specific fact situations: he does not seek to recover damages because a correctional officer dipped snuff in 7A or because Johnson revised the policy. Instead, his conditions of confinement claim is based on his exposure to ETS. He offers testimony concerning these fact situations as evidence in support of his assertion that Defendants acted with deliberate indifference to his

10

medical needs. Further, although Plaintiff did not specifically grieve Johnson's revision of the policy, he did complain about the effects of the revision and requested that the policy be again revised to prohibit inmates residing in 7A from purchasing and possessing tobacco products. (*See* Pl.'s Grievances, ECF No. 151-2 at Ex. A-1.) Upon review of Plaintiff's grievance history, as set forth above, the undersigned concludes that Plaintiff properly exhausted his ETS exposure claim against Defendants. It is therefore recommended that the Court find that Defendants have failed to prove this affirmative defense.

**B.    Claims for Injunctive Relief**

Defendants submit that Plaintiff's claims for injunctive relief are moot. The undersigned agrees and recommends that the Court dismiss Plaintiff's claims for injunctive relief as moot.

"Mootness is a jurisdictional question because the Court is not empowered to decide moot questions or abstract propositions . . . ." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal quotations marks and citations omitted); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 721 (6th Cir. 1993). Article III of the United States Constitution limits a federal court's exercise of judicial power to actual, ongoing "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. The case-or-controversy requirement of Article III subsists throughout all stages of the litigation. *U.S. v. Juvenile Male*, 131 S.Ct. 2860, 2864 (2011) (internal quotation marks and citation omitted) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed."). The doctrine of mootness is a corollary of Article III's case-or-controversy requirement. "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must

dismiss the action for want of jurisdiction." 15 James Wm. Moore et al, Moore's Federal Practice § 101.9, at 101–238 (3d ed. 2011).

In this case, on March 1, 2009, ODRC designated all of its buildings and grounds tobacco free. This event ended the alleged violations of Plaintiff's constitutional rights, which "render[s] the court unable to grant the requested relief." *See Berger*, 983 F.2d at 724; *Fredette v. Hemingway*, 65 F. A'ppx 929, 931 (6th Cir. 2003) (concluding that an inmate's request for injunctive relief to prevent his transfer to another prison became moot upon the inmate's subsequent transfer because "the district court was unable to grant the relief requested"). Put another way, Plaintiff's claims for injunctive relief are moot because "[n]othing remains to be enjoined or declared improper." *Berger*, 983 F.2d at 724; s*ee also Jones v. Caruso*, 421 F. App'x 550, 551 (6th Cir. 2011) (*sua sponte* finding the plaintiff's Eighth Amendment ETS claims for declaratory and injunctive relief claims moot where the department of corrections banned smoking inside all of its buildings during the pendency of the litigation).

Plaintiff argues that his claims for injunctive relief are not moot because ODRC could reinstate tobacco sales in Ohio prisons. "There is . . . an exception to the mootness doctrine for claims that are capable of repetition, yet evade review." *Fredette*, 65 F. A'ppx at 931. This narrow, capable-of-repetition exception is limited to situations in which "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration" *and* "there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id*. (internal quotation marks and citations omitted). Plaintiff relies on a newspaper article wherein the ODRC director commented on a link between increased prison violence and the tobacco ban, and also a breach of contract lawsuit against the prisons by the

12

tobacco suppliers. The evidence upon which Plaintiff relies is too speculative to fall within the narrow, capable-of-repetition exception to the mootness doctrine.

Accordingly, the undersigned recommends dismissal of Plaintiff's claims for injunctive relief as moot such that damages is the only relief potentially available to him on his Eighth Amendment claim.

**C.     Qualified Immunity**

Defendants next argue that Plaintiff's damages claims should be dismissed because they are entitled to qualified immunity. The undersigned agrees.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "[Q]ualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (internal quotation marks and citations omitted). The determination of whether a government official is entitled to qualified immunity involves two inquiries. *Miller v. Sanilac County*, 606 F.3d 240, 247 (6th Cir. 2010). "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at

13

the time of the violation?" *Id*. (internal quotation marks and citations omitted). The Court need not consider these inquiries sequentially. *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (citation omitted).

In this case, the undersigned finds that Defendants are entitled to qualified immunity from liability on Plaintiff's damages claims because Plaintiff has failed to demonstrate a violation of his Eighth Amendment rights. The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, including a duty to take reasonable measures to ensure the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A Plaintiff asserting an Eighth Amendment conditions-of-confinement claim must satisfy two elements. *Spencer v. Bouchard*, 449 F.3d 721, 727–28 (6th Cir. 2006). "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (internal quotation marks and citation omitted). Within the context of an ETS claim, to satisfy the objective component, "the plaintiff must establish that he has a serious medical need for a smoke-free environment, or that, regardless of his current health, the level of ETS in the prison creates an unreasonable risk of serious damage to his future health." *Palacio v. HofBaur*, 106 F. App'x 1002, 1004 (6th Cir. 2004) (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)) (internal quotation marks and citation omitted); *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) ("[A] prisoner must show that his medical needs are sufficiently serious. . . . The exposure to smoke must cause more than a mere discomfort or inconvenience." (internal quotation marks and citation omitted)); *Jones*, 421 F. App'x at 552 (citation omitted) (noting that the objective component of deliberate indifference based on exposure to ETS requires a prisoner to show that the exposure represented

14

a "serious health threat"). "Second, the prison official's state of mind must be one of deliberate indifference to inmate health or safety." *Id*. (internal quotation marks and citation omitted). To satisfy the deliberate indifference requirement, an inmate must demonstrate that the prison official knew that the inmate faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Id*. (internal quotation marks and citation omitted); *Hall v. Warren*, 443 F. App'x 99, 108 (6th Cir. 2011) (same); *Helling*, 509 U.S. at 32. "For claims challenging the conditions of confinement, wantonness is equivalent to deliberate indifference[,] . . . [but] [m]ere negligence will not suffice." *Taylor v. P. Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citations omitted).

  Plaintiff's damages claims cannot survive summary judgment because as Defendants point out, he has failed to present evidence that his exposure to ETS represented a serious health threat or that he had an objectively serious medical need for a smoke-free environment. *Jones v. Caruso* is instructive. In *Jones*, the United States Court of Appeals for the Sixth Circuit affirmed the district court's grant of summary judgment where the medical records the inmate submitted indicated that he had asthma and was prescribed inhalers and other medication, but that his symptoms were "relatively minor and could be managed with the use of his inhalers and other medication." 421 F. App'x at 552. The Court explained that the plaintiff had failed to demonstrate that his ETS exposure represented a "'serious health threat' rather than a 'mere discomfort.'" *Id*. (quoting *Hunt v. Reynolds*, 974 F2d 734, 735 (6th Cir. 1992). The Court rejected the inmate's contention that the district court had failed to properly consider that he also suffered from bronchitis because the plaintiff had "failed to substantiate his Eighth Amendment claim as it pertain[ed] to his bronchitis." *Id*. at 552 n.1. In this case, like the *Jones* inmate,

15

Plaintiff has failed to supply evidence substantiating his allegations that his ETS exposure constituted a serious health threat. Specifically, Plaintiff has produced no medical records or testimony from a medical professional indicating that he has serious medical needs that require a smoke-free environment. Moreover, even assuming that his alleged medical conditions exist, Plaintiff has failed to offer evidence demonstrating a causal link between his ETS exposure and his medical conditions. *See Wilcox v. Lewis*, 47 F. App'x 714, 715 (6th Cir. 2002) (affirming district court's grant of summary judgment where inmate demonstrated the existence of a serious medical condition but "presented no evidence that ETS had anything to do with that condition"); *accord Scott v. District of Columbia*, 139 F.3d 940, 943 (D.C. Cir. 1998) (concluding that the inmate's evidence was insufficient because he "failed to demonstrate a causal relationship between his [asthma] and an increased risk of harm to him from second-hand smoke"). Finally, Plaintiff has failed to present evidence demonstrating that 7A contained unreasonably high levels of ETS such that irrespective of any specific health condition, the risk of serious damage to his future health was unreasonable. *See Carter v. Wilkinson*, No. 2:05-cv-380, 2010 WL 2900399, at *4 (S.D. Ohio July 22, 2010) (Kemp, M.J.) (recommending that the Court grant summary judgment in favor of the defendants where the plaintiff failed to demonstrate that his housing unit contained unreasonably high levels of ETS and noting that "[s]ome exposure to tobacco smoke is a fact of everyday life").

In sum, Plaintiff has failed to come forward with evidence sufficient to create a genuine issue of fact regarding his Eighth Amendment claim. Because Plaintiff has not shown that Defendants have violated his constitutional rights, the undersigned recommends that the Court find that Defendants are entitled to qualified immunity and enter judgment in their favor on

16

Plaintiff's damages claims.

### III.

For the foregoing reasons, it is **RECOMMENDED** that Defendants' Second Motion for Summary Judgment be **GRANTED**.  (ECF No. 151.)

### PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  April 30, 2012        /s/ *Elizabeth A. Preston Deavers*
                              Elizabeth A. Preston Deavers
                              United States Magistrate Judge